(Superior Court of Cincinnati.)
General Term.

THE CINCINNATI STREET RAILWAY CO. v. THE CITY OF CINCINNATI.

(1). The construction placed upon the language of the street railroad ordinance in the City of Cincinnati v. Mt. Auburn Railway Co., 28 W. L. B., 276, in which it was declared that ''the owner of each street railway shall pay into the city treasury at the time of the acceptance, and annually thereafter, on the first day of January, in advance, for and upon each car run by it, the sum of four dollars per lineal foot of every such car, inside measurement, and such payment shall be a condition precedent to the right to operate the road'' is adopted and followed.

(2). There is no ambiguity in the ordinance which would warrant the construction that it permitted the company in estimating the amount due, to pay on each car, only that proportion of four dollars per lineal foot that the actual time the car was in operation bore to eighteen hours per day of 365 days per year; and such construction therefore can not be imposed either by a court or the conduct of the parties.

(3). Whether officials other than those who make a contract, or the successors of such officials, can put a ''practical construction'' on a contract, and whether the doctrine of ''practical construction'' is applicable to contracts made by public officials, are questions upon which it is not necessary in this case to express an opinion.

(4). Sec. 3438 R. S., provides with respect to a street railroad grant (inter alia) that ''After said grant or renewal of any grant shall have been made, whether by general or special order or by order of the county commissioners, neither the municipal corporation nor the county commissioners shall release the grantee from any obligations or liabilities imposed by the terms of said grant or renewal of grant during the term for which said grant or renewal shall have been made.'' Held: (a) That the permission given by the company from time to time to the city officials to examine its books to determine whether the reports made by the company of the number of cars used and the amount owing were true and correct, furnished no consideration for any agreement by which the city officials were to receive a less amount than was really due to the city, for the reason that by the ordinance under which the road was operating it was bound to grant permission to make such examination. (b) The provisions of sec. 3438 are unequivocal and forbid any release of what is due the city by its officials; and neither the principles of account stated nor of accord and satisfaction based upon the receipt of a less amount than was really due have any application.

SMITH, J.

The city of Cincinnati recovered a judgment against the Cincinnati Street Railway Company in the sum of $14,348.46, of which amount $12,715.60 was for unpaid car licenses, and the balance for unpaid percentage of gross earnings. The Street Railway Company prosecutes error to reverse that part of the judgment below which was rendered for unpaid licenses, but accepts that part with respect to gross earnings.

On February 7, 1879, the city of Cincinnati passed a general street railroad ordinance which was intended to apply to all companies to which in the future any street railroad grant should be made and to those companies already in the enjoyment of grants which should accept its terms.

The Cincinnati Street Railway Company accepted the terms of the ordi-

nance of 1879, and for the period covered by this action was-subject to its provisions.

The provisions whose construction and application are involved in this case are found in section 11 of the ordinance; and the case at bar presents the question whether for the six years preceding this action the street railway company has paid to the city of Cincinnati the amount due from it for license fees as provided in said section 11.

Section 11 is as follows:

"Section 11. Railroad to pay $4.00 per lineal foot of each car, and two and one-half per cent. of gross earnings.

"The owner of each street railway shall pay into the city treasury at the time of acceptance, and annually thereafter, on the first day of January, in advance, for and upon each car run by him, the sum of four dollars per lineal foot of every such car, inside measurement, and such payment shall be a condition precedent to the right to operate the road, and if not paid within ten days after due, the mayor shall have the right summarily to stop the running of the cars, and in the event of such stoppage, no liability for damage shall accrue. And in addition thereto, any person or company accepting hereunder shall pay, under the same condition, and subject to the same penalty, into the city treasury, quarterly, on the first day of January, April, July and October, of each year, two and one-half per cent. of the gross earnings from every source of such company during the preceding quarter, to be applied to the cleaning and repairing of the streets wherein the tracks of such company exist, and the board of public works or common council shall at any time have the right of access to the books of the company by any agent they may designate for that purpose in order to ascertain the amount of such gross earnings."

The construction of the language of this ordinance so far as it relates to the four dollars a lineal foot charge, generally spoken of as license fee; is the same as that used in the ordinance granting to the Mt. Auburn Cable Railway Company the right to operate its line of railway in Cincinnati and was construed by this court in general term and the judgment affirmed by the supreme court without report.

(The City of Cincinnati v. The Mt. Auburn Railway Company, 28 W. L. B., 276; 54 Ohio St., 645).

In the opinion in general term, this court in giving its construction to this language said:

"Our construction of this provision of the ordinance, therefore, is that the payment of the license fee is a condition precedent which is required of the company to enable it to secure the privilege of running upon the streets of the city the number of lineal feet of cars thus paid for; that the company is not compelled to run the same car or cars at all times, but may change at will the particular car or cars run, provided there is not operated on the road more lineal feet of cars than is paid for on the first of January preceding; and that if the company having paid in advance a license for a certain number of lineal feet, fails to exercise its privilege, it must bear the loss and the city is not concerned with it; and if the road puts in operation during the year more lineal feet of cars than it has paid for on the first of January, it must pay to the city for this purpose at the rate of four dollars per lineal foot for such extra feet so operated."

In the case at bar the company did not so construe the ordinance, but on the contrary (to quote from the brief of defendant in error):

"The company assumed that as a basis for its obligation of four dollars per lineal foot on each and every car run during the year it would pay only on cars running eighteen hours per day, and 365 days in the year. This method was entirely arbitrary. Under it the company might have 600 cars in operation at one time during the year, and pay only on 100 cars if the total 600 cars were running but three hours per day each. In other words, if the company had six cars on a particular route in operation for three hours a day for 365 days a year they would count those six cars as one. Or if they had eighteen cars in operation for one hour a day each for the whole year, they would count the eighteen cars as one car.

Having ascertained by this method the number of cars in operation on each route for each day in the year they made monthly averages of the number of cars thus in operation. Then having the monthly average of the number of cars, in order to ascertain the yearly average, they added these monthly averages together and divided by twelve and upon this yearly average thus obtained they paid their car license to the city."

In other words, the company contends that the words "for and upon each car run by him (it) the sum of four dollars per lineal foot inside measurement upon every such car", means four dollars per lineal foot, etc., upon the average number of cars which run eighteen hours per day and 365 days in the year.

The court below followed the construction of the language of this ordinance that was announced in the Mt. Auburn Cable Company case.

But as the company had failed to keep a record of the number of cars actually operated over its lines during the period under investigation it was not possible to enter a judgment for the

city for the full amount to which it was probably entitled.

But as the books of the company showed the monthly averages, the court was able to declare that when in any year the highest monthly average was greater than the annual average upon which payment was made, a recovery should be had for the number of cars represented by the difference between the highest monthly average and the annual average. By applying this method to the six years in controversy the amount of the judgment which is sought to be reversed here was determined.

Aside from the fact that the true construction of the language of this ordinance has been determined by the supreme court, and the construction is therefore no longer open to dispute, the construction urged by the Street Railway Company is not new, but is substantially the same that was urged in the Mt. Auburn Cable Company case declared by the courts to be unsound.

The defendant, however, seeks to avoid the application of this construction of the ordinance to the claim of the city in this case upon the ground that the ordinance so far as it applies to the payment of license fees is ambiguous, and that the parties having given a practical construction to it, which is the one now contended for by the defendant, such construction is the one by which the parties' rights are to be determined.

Undoubtedly there is a class of cases in which the principle is declared that where the terms of a contract are ambiguous and the parties to the same have by their conduct shown what their construction of the contract is, the court will adopt such construction as the true one. But the city denies that there is any ambiguity in the terms of this ordinance which would warrant the construction claimed by the Street Railway Company; denies that the parties who made this contract ever put any construction upon it by their conduct; denies that by force of the statute, sec. 3438, the city could by conduct or in any other way release the street railroad company from any of its obligations to the city as defined by the ordinance; and denies that the principle of "practical construction" has any application to municipal corporations.

If any one of these contentions of the city is sound, the defense of "practical construction" fails.

It may be conceded for the sake of argument that the ordinance is ambiguous upon the question whether the company is compelled to run the same car or cars at all times and can not change at will the particular car or cars run, provided there is not operated on the road more lineal feet of cars than

is paid for on the first of January preceding; and that it is ambiguous upon the question whether if the company has paid in advance a license for a certain number of feet and failed to exercise its privilege, it must bear the loss; for such concessions do not affect the case, because it is not contended by the railroad company that it ever paid any additional license fee for substituted cars, or that it ever paid on the first of January of any year upon a larger number of lineal feet than it used. But there is no ambiguity in the ordinance which would warrant the construction that the ordinance permitted the company in estimating the amount due to pay on each car only that proportion of four dollars per lineal foot that the actual time the car was in operation bore to eighteen hours per day of 365 days per year.

The ordinance, in our opinion, is not susceptible of any such construction, and as it is not susceptible of any such construction, it can not be imposed upon it either by a court or by the conduct of the parties.

This principle is clearly stated in Cincinnati v. Gas Light & Coke Company, 53 Ohio St., 284, where it is stated that:

"It is conceded by counsel for the Gas Company that if the contract is not ambiguous that it must be enforced according to its terms without regard to the construction heretofore placed upon it by the parties in the course of its performance."

The ordinance whose construction we are seeking was passed as a law required by the board of public works and the common council and signed by the mayor, and the practical construction relied upon to determine the construction is claimed to arise from the acts of the auditor, treasurer and mayor in receiving payments from time to time of the amounts supposed to be due; and in giving receipts for the same, some of which receipts reciting that they were in full payment and from a statement which the railroad company claims it made as to its understanding of the meaning of the ordinance at the time it was before the board of public works for passage, the statement having been acquiesced in by the board as the true interpretation of the ordinance. The city disputes the fact of such statement having been made, or if made, that it was acquiesced in by the board as a correct construction of the ordinance; and if the existence of such facts were important, we should be compelled to find that the contentions of the city as to them were the true ones, because we could not find that the city's contentions are manifestly against the weight of the testimony.

The case then at best presents a

practical construction not by the officers who passed the ordinance, or even their successors, but by the auditing and collecting officials of the city; not by the legislative, but by a part of the administrative branch of the city government.

But the decision of our supreme court in the case of Cincinnati v. Gas Light & Coke Company, 52 Ohio St., 237, also raises a serious doubt as to whether the rule of practical construction has application in those cases in which the practical construction has not been by the officials who made the contract, but by their successors in office, or by the officials who are not even their successors in office, as in this case the auditor, treasurer or mayor. It is true that the language of the court in both the opinion and the syllabus declares that such pratical construction is of "much less welght" but does not declare that it is of no weight, although the reasoning of the court would seem to lead to the latter conclusion. The following citation from the opinion in that case is its expression upon that point:

"The reason of the rule of practical construction has its origin in the presumption that the parties to the contract, at and after the making thereof, knew what they meant by the words used, and that their acts and conduct in the performance thereof, are consistent with their knowledge and understanding, and that, therefore, their acts and conduct show the sense in which the words were used and understood by them. In such cases acts sometimes speak louder than words. But the reason of the rule ceases when the acts or conduct are not those of the parties who made the contract, and are not presumed to know in their own minds what was in fact meant by the words used. The acts and conduct of the parties following after the parties who made the contract, must in the nature of the case be only their own construction of the words used, and not an acting out of the understanding of the words by the parties who used them. The same is true of public officers. They may put their own construction upon the words used, but in doing so they are not acting on the mental understanding of the sense in which the words were used by those who made the contract or written instrument."

"In such cases the acts and conduct of the parties in the performance of the contract are only their construction of the meaning of the words used; and their construction of the words used by others, should not override the construction to be placed thereon by the courts. So that, while the practical construction of the contract by the parties who made it, is entitled to great weight, in case of doubt, the construc-

tion placed thereon by those who follow is of much less weight."

But we are not required in this case to express an opinion on the question whether officials other than those making a contract can give a "practical construction" to it, or on the question whether the doctrine of practical construction is ever applicable to municipal corporations, for the reason that by force of the provisions of section 3438 of the Revised Statutes of Ohio, in force at the time of the passage of this ordinance, neither the executive, legislative or administrative branch of the city of Cincinnati, had any authority by practical construction or in any other way to release the railroad company from the obligations which were imposed on the company by the terms of the ordinance. Section 3438 is and was as follows:

"The right to so construct or extend such railway within, or beyond the limits of a municipal corporation can be granted only by the council thereof, by ordinance, and the right to construct such railway within or beyond the limits of an incorporated village can be granted only by the county commissioners by order entered on their journal, and after said grant or renewal of any grant shall have been made, whether by general or special order, or by order of the county commissioners, neither the municipal corporation nor the county commissioners shall release the grantee from any obligations or liabilities imposed by the terms of said grant or renewal of grant during the term for which said grant or renewal said shall have been made."

It was urged in argument, however, that this section is not applicable when a consideration is given by the company for any release of its obligations by the city, and that this principle was upheld by this court in Clement v. The City of Cincinnati (16 W. L. B., 355, affirmed without report by the Supreme Court in 19 W L. B., 74).

Such an exception to the general terms of the ordinance was made in the case cited; but as there was no consideration given in this case by the company, the case cited has no application. The only consideration suggested to us by counsel for the company in the oral argument, although none is suggested in the brief, is that the company permitted the city to examine its books to determine whether the reports made by the company of the number of cars used and the amount owing were true and correct. But it was the duty of the company to make true reports of the number of cars used and the amount owing by it; and the granting by the company to the city officials of permission to examine the books and determine whether the reports were true and

the amounts correct furnished no consideration. The company was bound to tell the truth and to pay the correct amount, and permission to examine the books to learn whether the company was doing what it was bound to do, can not. it seems to us, by any straining of logic, be construed to be a consideration.

The provision of section 3438 also disposes of the defenses of the company of account stated and accord and satisfaction, by which the company contends that the city is estopped to claim that there is more money due it than its officers supposed to be due it. The provisions of section 3438 are unequivocal, and forbid any release of what is due the city by its officials; and in the face of this statute, neither the principles of account stated nor of accord and satisfaction, based upon the receipt of a less amount than was really due, have any application. . ₀

Dempsey, J., and Jelke, J., concur.

E. W. Kittredge, J. W. Warrington, for Plaintiff in Error.

E. G. Kinkead, Wade H. Ellis Corporation Counsel for Defendant in Error.